IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **SCOTT LEE BRAUN**, *et al.*, | : |
| | : Case No. 2:19-cv-05050; 20-cv-3052 |
| Plaintiffs, | : |
| | : Chief JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : Magistrate Judge Kimberly A. Jolson |
| **COULTER VENTURES, LLC d/b/a,** | : |
| **ROGUE FITNESS**, *et al.*, | : |
| | : |
| Defendants. | : |

**OPINION & ORDER**

**I.     INTRODUCTION**

This matter is before the Court on Plaintiffs Scott Lee Braun, Robert E. Hessler, Allen D. Bishop III, Marcellus Murray, and Larry Benn's Motion for Conditional Certification and Court-Supervised Notice to Potential Opt-in Plaintiffs, under the Fair Labor Standards Act ("FLSA"). (ECF No. 63). Defendants oppose, on the ground that Plaintiff has not shown any common control among the various Defendants sufficient to establish that Plaintiff was similarly situated to other putative class members. (Doc. 65 at 1). Plaintiffs further move to strike Defendants' Notice of Supplemental Authority. (ECF No. 73).

For the reasons set forth herein, Plaintiff's Motion for Conditional Certification and Court-Supervised Notice is **GRANTED WITH MODIFICATIONS**. (ECF No. 63). This order supersedes and **VACATES** this Court's previous order, to the extent inconsistent with this order. (ECF No. 70). Plaintiffs' Motion to Strike is **DISMISSED AS MOOT**. (ECF No. 73). Defendants' Motion for Leave to file Surreply Instanter is **DENIED**. (ECF No. 80).[1]

---

[1] Thus, in *Bishop v. Coulter Ventures*, No. 20-cv-3052 (S.D. Ohio filed June 15, 2020), the pending motions in that case will be disposed of as follows: (1) the Motion to Strike is **DISMISSED AS MOOT**, (ECF No. 17); and (2) the Motion for Leave to File Surreply Instanter is **DENIED**, (ECF No. 19).

1

## II.     BACKGROUND

Plaintiffs brought the present collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code Chapter 4111, *et seq.* ("Fair Wage Act"), and the Ohio Prompt Payment Act. (ECF Nos. 1, 14, 44). Defendant Rogue Fitness manufactures strength and conditioning equipment, and its Columbus facility consists of management offices, a warehouse and manufacturing facility, and a retail store. (ECF No. 65 at 2).

Initially, Plaintiffs sought conditional certification of the following class:

> All current or former non-exempt employees in Defendants' warehouse, *customer service*, and/or manufacturing divisions and employed during the past three years who were paid from the beginning of their shift until the end of their shift despite being clocked in more than seven (7) minutes prior to their shift and/or remaining clocked in more than seven (7) minutes after their scheduled shift end time.

(ECF No. 63) (emphasis added).

After reviewing Defendants' motion in opposition, however, Plaintiffs conceded an "evidentiary vacuum" and seek conditionally to certify the following class instead:

> All current or former non-exempt employees in Defendants' warehouse and/or manufacturing divisions and employed during the past three years who were paid from the beginning of their shift until the end of their shift despite being clocked in more than seven (7) minutes prior to their shift and/or remaining clocked in more than seven (7) minute after their scheduled shift end time.

(ECF No. 66 at 1). In other words, Plaintiffs at first sought conditional certification of three categories of employees—Warehouse, Customer Service, and Manufacturing divisions—but they now only seek certification of those in the Warehouse and Manufacturing divisions.

Upon arrival to Defendants' facilities, Named Plaintiffs allege, the employees clocked in by holding their identification badges up to one of the time clock devices located at the near front entryway of the building, the loading docks, or the assembly area. (*Id.* at 4). Plaintiffs allege that Defendants' policy and practice of requiring the Plaintiffs to clock-in and begin working prior to

the start of their shift without pay violates the FLSA. (*Id.*). Thus, they ask this Court to: (1) conditionally certify the proposed collective FLSA class; (2) implement a procedure whereby Court-approved Notice of Plaintiff's FLSA claims is sent via U.S. mail and e-mail; and (3) require Defendants, within fourteen days of this Court's order, to identify all potential opt-in Plaintiffs.

Defendant opposes conditional certification, arguing that Plaintiffs have not met the burden of showing they are similarly situated to all putative collective-action class members. (ECF No. 65 at 8-18). Even if the Court grants Plaintiffs' Motion for Conditional Certification, Defendants oppose Plaintiffs' proposed opt-in notice procedure and thus request an order that the parties must work together to develop a revised notice plan. (*Id.* at 18-19).

### III. STANDARD OF REVIEW

The FLSA allows an employee to maintain an action on behalf of herself "and other employees similarly situated." 29 U.S.C. § 216(b). The Act establishes two requirements for a representative FLSA action against an employer: "(1) the plaintiffs must actually be 'similarly situated,' and (2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Snelling v. ATC Healthcare Services, Inc.*, No. 2:11-CV-983, 2012 WL 6042839, at *2 (S.D. Ohio Dec. 4, 2012) (quoting *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006)). The distinct "opt-in" structure of § 216(b) heightens the need for employees to "reciev[e] accurate and timely notice concerning the pendency of the collective action." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The statute therefore vests district courts with "discretion to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Id.* at 169. The decision conditionally to certify a class, and thereby facilitate notice, is thus "within the discretion of the trial court." *Snelling*, 2012 WL 6042839 at *2 (citing *Hoffman-La Roche*, 493 U.S. at 169).

3

Accordingly, the Sixth Circuit has "upheld a two-step procedure for determining whether an FLSA case should proceed as a collective action." *Heibel*, 2012 WL 4463771, at *2 (citations omitted). First, at the "initial notice" stage, before discovery has occurred, the Court "determine[s] whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members." *Id.* (quotation omitted). The second stage of the FLSA collective action analysis occurs once discovery is complete, when "the defendant may file a motion to decertify the class if appropriate to do so based on the individualized nature of the plaintiff's claims." *Heibel*, 2012 WL 4463771 at *2 (quotation omitted).

Whether Plaintiff's suit may proceed as a collective action pursuant to FLSA at this stage, then, depends on a showing that potential class members are "similarly situated." *Comer*, 454 F.3d at 546. The FLSA does not explicitly define the term "similarly situated," and neither has the Sixth Circuit. *Wade v. Werner Trucking Co.*, 2012 WL 5373311, at *4 (S.D. Ohio Oct. 31, 2012) (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009)). Although the Sixth Circuit has declined to "create comprehensive criteria for informing the similarly situated analysis," it has held that FLSA plaintiffs may proceed collectively in cases where "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585. "Thus, similarly situated class members under [the] FLSA are those whose causes of action accrued in approximately the same manner as those of the named plaintiffs." *Lewis*, 789 F. Supp. 2d at 868. In short, at this first stage, "the plaintiff must show only that 'his position is similar, not identical to the positions held by the putative class members.'" *Comer*, 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 595 (S.D. Ohio 2001)).  The Court considers that

4

issue "using a fairly lenient standard, and typically [the determination] results in conditional certification of a representative class." *Id.* (quotation omitted).

## IV.   LAW & ANALYSIS
### A.  Motion for Leave to File Sur-Reply

Defendants filed a motion for leave to file sur-reply to Plaintiffs' Motion to Certify Class. (ECF No. 80). Defendants contend that a surreply is necessary in light of newly discovered evidence that would render complicated the task of identifying all non-exempt employees under the proposed certified class. Plaintiffs respond that Defendants have not shown good cause to file a surreply as required under Local Rule 7.2(a)(2). They allege that Defendants have not raised new facts but instead continue their "whack-a-mole defense." (*Id.*).

The Local Rules for the Southern District of Ohio provide for memoranda in opposition and replies to such memoranda. The Local Rules also prohibit "additional memoranda beyond those enumerated . . . except upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). As this Court noted in *Streeter v. Adaptasoft, Inc.*, No. 2:17-cv-01125, 2018 WL 4030546, at *3, 2018 U.S. Dist. LEXIS 143247, at *7 (S.D. Ohio Aug. 23, 2018) (Marbley, J):

> While the Court's Local Civil Rules do not define good cause, "this Court has consistently held that in order for a party to be given permission to file a sur-reply, the reply brief must raise new grounds that were not presented as part of the movant's initial motion." *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, No. 2:07-cv-1190, 2010 U.S. Dist. LEXIS 114665, 2010 WL 4117552, at *4 (S.D. Ohio Oct. 19, 2010) (citations omitted). The Local Civil Rules also provide that "[e]vidence used to support a reply memorandum shall be limited to that needed to rebut the positions argued in memoranda in opposition." S.D. Ohio Civ. R. 7.2(d).

*Id.*

In particular, Defendants have determined that the task of identifying all non-exempt employees in Rogue Fitness's warehouse and/or manufacturing divisions over the past three years who ever "clocked in more than seven (7) minutes prior to their shift and/or remaining clocked in

5

more than seven (7) minute[s] after their scheduled shift end time" will take approximately 1,450 hours – almost a full year of full-time work – to complete. Defendants explain that they did not have sufficient information to understand previously that Plaintiffs' definition of the proposed class would present.

Plaintiffs oppose, contending that Defendants' motion is an effort to raise a completely new argument which they failed to raise initially in their Opposition to Plaintiffs' initial Motion for Conditional Certification. What is more, Defendants proposed "good cause" for being granted such leave is the supposed difficulty that will ensue from their self-constructed narrow view of how to manage Plaintiffs' proposed conditional class, Plaintiffs argue. Plaintiffs also fear granting of the Leave to File Surreply would result in prejudice, as the statute of limitations for the putative class continues to run until members of the putative class can ultimately opt-in, consequently favoring Defendants' position. Plaintiffs urge this Court to reject the supplemental authority and order Defendants to notify all of its employees in the departments conditionally certified during the relevant time period, allowing them to self-select based on their hours and ability to prove at trial that Defendants required them to be at work before and after their shit to perform duties integral to their primary duties.

Finding that Plaintiffs' concerns of prejudice outweigh Defendants' administrative concerns concerning identifying class members, Defendants Motion for Leave to File a Surreply is **DENIED**.

### B. Similarly Situated Analysis

Plaintiffs seek FLSA conditional certification with respect to the following subclass:

All current or former non-exempt employees in Defendants' warehouse and/or manufacturing divisions and employed during the past three years who were paid from the beginning of their shift until the end of their shift despite being clocked in more than seven (7) minutes prior to their shift and/or remaining clocked in more than seven (7) minutes after their scheduled shift end time.

6

(ECF No. 66 at 1).

Plaintiffs argue that they have met the requirements for FLSA conditional certification because named Plaintiffs and the putative opt-in Plaintiffs share a common experience, namely, that every non-exempt hourly worker—regardless of job title—completed integral, indispensable, and unpaid work before and after the scheduled shift. (*Id.* at 11). In other words, Plaintiffs allege that it was Defendants' common business practice to compensate employees based on their scheduled times, rather than time worked. (ECF No. 63 at 11). Plaintiffs add that although each of Defendants' departments has different job titles and job duties, all the Plaintiffs are similarly situated as every non-exempt hourly worker regardless of the division completed integral, indispensable, unpaid work before and after the scheduled shift, even though the employees tracked their actual hours worked by clocking in, as it was Defendants' common business practice solely to compensate employees based on their scheduled times. (*Id.*).

Defendants counter that Plaintiffs and the putative class members are not similarly situated. (ECF No 65). Because Plaintiffs originally sought certification of three classes of employees, including those in the Customer Service Division, much of Defendant's response in opposition focused on the Customer Service Division. In particular, Defendants contended that while the proposed class purports to include employees from the Rogue Fitness's Customer Service division, Plaintiffs themselves only worked in the Warehouse and Assembly divisions. (*Id.* at 1). None of them performed any of the pre- or post-shift tasks that are performed by employees in the Customer Service division, nor do any of them know through personal knowledge what purported tasks are performed in that division, how much time it takes to perform such tasks, how that division operates, and whether and the extent to which any tasks performed in that division are similar to or different from any tasks performed in the divisions in which the Plaintiffs themselves worked.

7

(*Id.* at 2). Thus, as a legal matter, Defendants argue that conditional certification is inappropriate because the Named Plaintiffs are not similarly situated to the putative conditional class. (ECF No. 65 at 6). Defendants further object because Plaintiffs have not produced any evidence that the current or former employees who worked in the Customer Service division believe that their own performance of such tasks constituted "work," whether they were compensated for such tasks, or whether they are interested in joining this lawsuit. As a result, Defendants contend that there is no evidence that Plaintiffs are similarly situated in any material way to the employees in Customer Service division that Plaintiffs seek to represent. (*Id.* at 2).

Plaintiffs object to Rogue's characterization of the job duties as vastly different. The Defendants' characterization, Plaintiffs contend, obscures the controlling legal standard—i.e., each warehouse and manufacturing employee may have secured or returned different equipment, received unique instructions, or shared uncommon information, but all of those employees were subject to the same uniform payroll policy and practice. For example, all employees, regardless of job duties, had to arrive before their scheduled shift and remain afterwards.

In addition to the allegations in the pleadings, Plaintiffs submitted to the Court seven declarations, purporting to demonstrate that the Named Plaintiffs are similarly situated to the Putative Opt-In Plaintiffs as each worked for Defendants as non-exempt employees, all were paid in the same manner, and all complete integral, indispensable, unpaid work before and after the start of their scheduled shift. (ECF No. 63 at 3).

The controlling legal standard is that "disparate job duties are largely irrelevant at this stage[] and will be considered at the second stage of the analysis instead." *Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-CV-1225, 2019 WL 4667497, at *7 (S.D. Ohio Sept. 25, 2019) (citing another source). Still, conditional certification is not a foregone conclusion, and a district court's

review is not perfunctory. *Sisson v. OhioHealth Corp.*, No. 2:13-CV-0517, 2013 WL 6049028, at * 2 (S.D. Ohio Nov. 14, 2013) ("A 'modest' showing does not . . . mean one that the court will rubber-stamp as a proposed class.").

The question is whether the common policy Plaintiffs allege as unlawful—i.e., Rogue Fitness' alleged clock-in and clock-out policy—overweighs the factual differences among the three different workplace divisions, thus indicating that conditional certification is proper. In other words, are the employees with different job duties similarly situated enough to the issues central to the Plaintiffs' claims? Before Plaintiffs edited the proposed class for certification, there were three different divisions: Warehouse, Customer Service, and Manufacturing. Defendants argued that conditional certification is improper because the employees in those divisions have vastly different job duties that require different equipment and entail different pre- and post-shift tasks. (ECF No. 65 at 16). The remaining legal analysis reviews only the amended class, i.e., Warehouse and Manufacturing divisions.

On the one hand, the claims asserted in this putative collective action involve different job duties. And the putative class members' day-to-day job duties differ. And a consideration of divergent "principal activities" of the relevant position is appropriate. *Duncan-Watts v. Nestle USA, Inc.*, No. 1:19-CV-01437, 2020 WL 589041 (N.D. Ohio Feb. 5, 2020) (stating that an employee's theory of liability "hinges upon [their] job duties"); *Goldstein v. Children's Hosp. of Philadelphia*, No. 10-1190, 2013 WL 664174 (E.D. Pa. Feb, 25, 2013) ("We also appreciate that the principal activities of the various jobs are so variable that even maintenance of identical uniforms may not bear the same 'indispensable' relation to the job from one position to another.").

On the other hand, the Named Plaintiffs allege a widespread unlawful policy affecting the putative class members, irrespective of these differences, i.e., a companywide policy to compensate employees based solely on their scheduled times.

Based on the evidence submitted to the Court thus far, Plaintiffs have met the fairly lenient standard necessary to demonstrate that FLSA conditional collective action certification is appropriate under either of the above standards. The claims by Plaintiff and the putative class members are indeed "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585.  And beyond Plaintiff's allegations, Plaintiffs have submitted some evidence identifying potential class members, supported by affidavits, and demonstrating a "colorable basis" that illegal pay practices and procedures are in place at the locations run by Defendants.

Thus, this Court conditionally certifies the following class:

> All current or former non-exempt employees in Defendants' warehouse and/or manufacturing divisions and employed during the past three years who were paid from the beginning of their shift until the end of their shift despite being clocked in more than seven (7) minutes prior to their shift and/or remaining clocked in more than seven (7) minutes after their scheduled shift end time.

(ECF No. 66 at 1).

### C.  Notice

Having conditionally certified the class, this Court also has the authority to supervise notice to potential plaintiffs. *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 172 (1989). *See also Lewis v. Huntington Nat. Bank*, 789 F. Supp. 2d 863, 870 (S.D. Ohio 2011). By "monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Hoffmann-La Roche*, 493 U.S. at 172. The Court may facilitate notice to the putative

class "so long as the court avoids communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits." *Swigart*, 276 F.R.D. at 214.

Plaintiffs request that Defendants identify all potential opt-in Plaintiffs within fourteen days after entry of the order conditionally certifying the class and produce a list in electronic and importable format of the names, addresses, e-mail addresses, and phone numbers of all Putative Class Members. (ECF No. 63 at 17). They furthermore propose a Court-approved notice procedure sent by regular mail and e-mail. Plaintiffs also ask this Court to order that the Notice and Consent forms be posted in plain view at each of the Defendants' departments and at each of its time clocks. (ECF No. 63 at 19).

Defendants, however, would request that this Court give the parties thirty days after entry of this order to confer on the notice-and-notification process. (ECF No. 65 at 19). Defendants state that there are many defects in Plaintiffs' proposed notice, the correction of which should be discussed between counsel and resolved prior to distribution of the notice.

Courts traditionally "approve only a single method for notification unless there is a reason to believe that method is ineffective." *Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 879 (S.D. Ohio 2017). The trend in the Southern District of Ohio, however, "is to allow notice by mail and email to ensure that putative class members receive notice of the pending action." *Hall v. U.S. Cargo & Courier Serv.*, LLC, 299 F. Supp. 3d 888, 899-900 (S.D. Ohio 2018). This Court has followed this trend and will continue to allow both mail and email notice to the putative class members. *See, e.g.*, *Nazih v. Café Istanbul of Columbus, LLC*, 2018 WL 4334613 (S.D. Ohio 2018).

## V. CONCLUSION

For the reasons states above, Plaintiff's Motion is **GRANTED WITH MODIFICATIONS**. (ECF No. 63). This order supersedes and **VACATES** all previous orders in

this case to the extent inconsistent with this order. (ECF No. 70). The following class is hereby conditionally certified:

> All current or former non-exempt employees in Defendants' warehouse and/or manufacturing divisions and employed during the past three years who were paid from the beginning of their shift until the end of their shift despite being clocked in more than seven (7) minutes prior to their shift and/or remaining clocked in more than seven (7) minutes after their scheduled shift end time.

(ECF No. 66 at 1).

The Court hereby **ORDERS** counsel to meet and confer, and to provide the Court with a Proposed Plan for providing notice to the potential collective action members. This Court further **ORDERS** the parties shall report back to the Court within thirty days after entry of this Order with such Proposed Plan. If the parties are unable to agree on notice, separate proposed notices shall be submitted for the Court's approval by the same date. Plaintiffs' Motion to Strike is **DISMISSED AS MOOT**. (ECF No. 17).

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  July 21, 2021**