UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **SCOTT LEE BRAUN,** *et al.*, : | |
| : | |
| Plaintiffs, : | Case Nos. 2:19-cv-5050 & 2:20-cv-3052 |
| : | |
| v. : | Chief Judge Algenon L. Marbley |
| : | |
| **COULTER VENTURES, LLC d/b/a** : | Magistrate Judge Kimberly A. Jolson |
| **ROGUE FITNESS,** *et al.*, : | |
| : | |
| Defendants. : | |

**OPINION & ORDER**

These cases are before the Court on Plaintiffs' Motion to Toll (ECF No. 92) and a pair of competing notice proposals (ECF Nos. 97, 98). On Plaintiffs' application (ECF No. 104), the Court held a status conference on March 9, 2022. For the reasons that follow, and as discussed at the status conference, Plaintiffs' Motion to Toll (ECF No. 92) is **GRANTED IN PART**. The Court further **APPROVES** Plaintiffs' proposed notice form and Defendants' proposed notice plan, each with modifications as will be discussed.

### I. BACKGROUND

These consolidated Fair Labor Standards Act ("FLSA") cases[1] are brought by current and former employees at the warehouse and manufacturing divisions of Rogue Fitness, a maker and supplier of personal fitness equipment. (ECF No. 44 ¶¶ 1, 10). The Court granted conditional certification on July 21, 2021, to the following class:

> All current or former non-exempt employees in Defendants' warehouse and/or manufacturing divisions and employed during the past three years who were paid from the beginning of their shift until the end of their shift despite being clocked in more than seven (7) minutes prior to their shift and/or remaining clocked in more than seven (7) minutes after their scheduled shift end time.

---

[1] *Braun*, Case No. 2:19-cv-5050, and *Bishop*, Case No. 2:20-cv-3052, were consolidated by order of the Court in January 2021. (ECF No. 69). Throughout this opinion, docket numbers will refer to *Braun*.

1

(ECF No. 96 at 12). A complete factual background is set forth in that Order; rather than restate it here, the Court will incorporate that discussion by reference and continue to the procedural history.

Plaintiff Braun initiated the older of the two cases on November 18, 2019. (ECF No. 1). He moved for conditional certification of an FLSA collective action, pursuant to 29 U.S.C. § 216(b), on January 24, 2020. (ECF No. 25). On April 22, 2020, Plaintiffs filed a Second Amended Complaint (ECF No. 44); the next day, the case was reassigned from Judge Smith. (ECF No. 45). This Court ruled on October 5, 2020, that Plaintiffs' first Motion for Conditional Certification was rendered moot by their Second Amended Complaint. (ECF No. 60). Accordingly, Plaintiffs filed a new Motion for Conditional Certification on November 2, 2020, making reference to the Second Amended Complaint. (ECF No. 63). Plaintiff Bishop's case was consolidated with Plaintiff Braun's on January 19, 2021. (ECF No. 69).

On February 1, 2021, the Court granted Plaintiffs' second Motion for Conditional Certification on the erroneous ground that Defendants had stipulated to the class. (ECF No. 70). Defendants in fact had filed a timely opposition brief. (ECF No. 65). The parties recognized this error and promptly filed a Joint Motion to Vacate. (ECF No. 71). After waiting several more months, Plaintiffs filed on June 10, 2021, a Motion to Toll the FLSA statute of limitations (ECF No. 92), which this Opinion will address.

On July 21, 2021, the Court vacated its prior Order and entered a new conditional certification over Defendants' opposition. (ECF No. 96). The Court ordered the parties to confer and submit a proposed plan for providing notice to potential opt-in plaintiffs. (*Id.* at 12). In the event the parties could not agree on a notice plan, the Court authorized them to submit separate proposals. (*Id.*). The parties met and conferred per the Court's instruction and reached an agreement on the consent form. They could not agree, however, on the notice form or plan. They

therefore submitted competing proposals on August 20, 2021. (ECF Nos. 97, 98). The notice proposals also will be resolved in this Opinion.

These two matters—the tolling motion and the notice proposals—through no fault of the parties, were not immediately addressed. The Court held a status conference on March 9, 2022, to restart the case. It now will rule on these matters in turn.

## II.  MOTION TO TOLL

First is Plaintiffs' Motion to Toll (ECF No. 92). In the Motion, Plaintiffs seek equitably to toll the FLSA statute of limitations such that persons "employed at any time since January 15, 2018," will receive the opt-in notice. (*Id.* at 1). They clarify that their Motion "is strictly for the purpose of the notice that will be sent" and that the Court would not be reaching a final decision on whether such opt-in plaintiffs may pursue their claims. (*Id.* at 5). Defendants oppose tolling of any length, for notice purposes or otherwise. (ECF No. 94).

### A.  Applicable Law

FLSA actions are governed by a two-year statute of limitations—which increases to three years where the violation is willful, as is alleged in this case. 29 U.S.C. § 255(a). The statute of limitations runs from the date an opt-in plaintiff files her consent to join the case. 29 U.S.C. § 256(b). Thus, without tolling, an opt-in plaintiff in this case would be eligible to recover unpaid wages from paychecks that are up to three years old, measured from the date of their consent to join. *Cf. Betts v. Cent. Ohio Gaming Ventures, LLC*, 351 F. Supp. 3d 1072, 1075 (S.D. Ohio 2019) ("A new cause of action accrues with the receipt of each paycheck that fails to properly include pay for overtime wages. . . . [F]iling the complaint does not toll the statute of limitations. Rather, the statute of limitations continues to run on each individual claim until each opt-in plaintiff files

3

his or her consent to join the action." (internal citations omitted)). Consequently, any delay in conditional certification and notice approval causes claims to lapse for some number of plaintiffs.

FLSA actions are subject to the doctrine of equitable tolling, which "permits courts to extend the statute of limitations on a case-by-case basis to prevent inequity." *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 826 (S.D. Ohio 2007) (citing *Truitt v. Cty. of Wayne,* 148 F.3d 644, 648 (6th Cir. 1998)). Equitable tolling is "sparingly bestow[ed]," and it "[t]ypically . . . applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000).

The Sixth Circuit has identified the following factors as relevant to an equitable tolling analysis:

> 1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness is remaining ignorant of the particular legal requirement.

*Truitt*, 148 F.3d at 648. The burden in this analysis falls on the party seeking tolling. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010).

In the FLSA context, some courts are hesitant to grant tolling for "potential opt-in plaintiffs [who] *have not yet been identified or notified*." *Betts*, 351 F. Supp. 3d at 1075 (emphasis in original). This is because "[t]he Court cannot properly apply the Truitt five-factor analysis to the claims of plaintiffs not yet before the court." *Id*; *see also Brittmon v. Upreach, LLC*, 285 F.Supp.3d 1033, 1046 (S.D. Ohio 2018) ("Most District Judges in this circuit have concluded that it is improper to equitably toll the claims of potential opt-in plaintiffs who are not yet before the court."); *Jesiek v. Fire Pros, Inc.*, 2011 WL 2457311, at *2 (W.D. Mich. June 16, 2011) ("The statute of limitations is an affirmative defense which defendant has yet to assert with regard to the

4

claims of any opt-in plaintiff. If and when that defense is asserted, the burden will be on each opt-in plaintiff to demonstrate facts satisfying the Sixth Circuit's requirements for the application of the doctrine of equitable tolling." (internal citation omitted)).

Other courts depart from this trend and occasionally grant tolling before opt-in plaintiffs are identified. *See, e.g.*, *Kampfer v. Fifth Third Bank*, 2016 WL 1110257, at *7 (S.D. Ohio Mar. 22, 2016) ("The Defendants argue such relief is premature as the Plaintiffs are not asking for relief on their own behalf but on behalf of the potential opt-in plaintiffs. . . . While this issue is the subject of debate among some of my trial court colleagues in this Circuit, I find there is a valid reason to allow limited equitable tolling in this case."); *see also Engel v. Burlington Coat Factory Direct Corp.*, 2013 WL 5177184 (S.D. Ohio Sept. 12, 2013). This Court has joined the minority view in at least one instance. *See Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842 (S.D. Ohio 2013) (Marbley, J.) (applying five-factor test to claims of putative opt-in plaintiffs before issuance of court-ordered notice).

Plaintiffs have *not* moved for tolling of this variety, so the Court has no occasion to apply its approach in *Struck*. *See* ECF No. 92 at 5 ("To be absolutely clear, *Plaintiffs are not moving for equitable tolling of the claims by unknown opt-ins*. This motion is strictly for the purpose of the notice that will be sent . . . ." (emphasis in original)). The Court will consider Plaintiffs' Motion as it is presented, which is under the *Betts* line of cases.

Once opt-in plaintiffs are before the Court, group-wide tolling still may be ordered in appropriate circumstances. The court in *Betts* granted tolling for a full group of opt-in plaintiffs due to "excessive delay" in adjudicating the motion for conditional certification, which had been ripe on the court's docket for "almost sixteen months." 351 F. Supp. 3d at 1077. It noted that, "in situations where court delay has time-barred a sizeable number of potential plaintiffs, many courts

5

find that the delay alone warrants equitable tolling and decline to analyze the typical equitable tolling factors." *Id.* (citing *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 171 (S.D.N.Y. 2014)). The court concluded "that six months would have been a reasonable amount of time to rule on the ripe motion, and all delay exceeding six months constitutes an extraordinary circumstance beyond Plaintiffs' control." *Id.* On that basis, the *Betts* court tolled the statute of limitations by ten months "with respect to any plaintiff who timely and validly opted into the lawsuit." *Id.* at 1078.

### B. Application

Here, Plaintiffs seek to toll the statute of limitations such that the notice forms, when distributed, will define the collective action as consisting of all current and former employees of Defendants since January 15, 2018. (ECF No. 92 at 5–6). In essence, Plaintiffs are arguing that January 15, 2021, was a reasonable time for the Court to have adjudicated their Motion for Conditional Certification, and that any delay beyond that point was extraordinary and beyond the control of potential opt-in plaintiffs. At this point, the delay from their November 2020 filing to the Court's present approval of a notice plan has surpassed sixteen months. Potential opt-in plaintiffs have been harmed by that delay, Plaintiffs argue, because the FLSA statute of limitations continues to run against them until their consent forms are filed. (*Id.* at 3).

The following hypothetical, adapted from Plaintiffs' Motion (*Id.* at 5), illustrates the relief they seek. Absent tolling, the notice form presumably would be addressed to all current and former employees since July 21, 2018, which is three years prior to the Court's grant of conditional certification. Plaintiffs request that the notice form instead be addressed to all current and former employees since January 15, 2018. The effects are two-fold. First, employees with claims arising *solely* between January 15, 2018, and July 21, 2018—for instance, an employee who left Rogue Fitness in May 2018—would receive the notice form only if tolling is granted. If tolling is denied,

they never would learn of this lawsuit. Second, employees with claims arising *mostly* between January 15, 2018, and July 21, 2018—for instance, an employee who left the Rogue Fitness in August 2018—would receive the notice form in both scenarios; but in the latter, they would undervalue their potential claims and might choose, on incomplete information, not to join the collective action. If tolling is granted, therefore, both groups of potential opt-in plaintiffs would have the opportunity to make an informed decision on whether to file consent forms. Conversely, if the notice form states a cutoff date of July 21, 2018, then certain opt-in plaintiffs never would come before the Court.

Again, Plaintiffs make clear that opt-in plaintiffs with claims arising between January 15, 2018, and July 21, 2018, would *not* be definitively in the case; rather, the Court would need to reach a later decision on whether equitable tolling is appropriate in their individual circumstances. That decision would come after the notice period runs and all consents are received. Tolling for purposes of the notice form, as Plaintiffs propose, gives opt-in plaintiffs a *chance to argue* for equitable tolling.

That is consequential because, under *Betts* and related authorities, opt-in plaintiffs will have colorable arguments for equitable tolling on the basis of undue delay in the Court's decisions on conditional certification and notice approval. Those employees ought to come before the Court for a full determination on equitable tolling, and the notice form ought not give them a false impression (or worse, exclude them from the mailing) by stating a cutoff date that fails to account for the possibility of tolling. Accordingly, Plaintiffs' concerns about the notice date are legitimate and well-taken.

Defendants' arguments against tolling mostly pertain to the second step of the Court's analysis, *i.e.*, whether it will be appropriate to toll on a group-wide basis once opt-in plaintiffs are

7

identified. As Plaintiffs note, however, their tolling motion pertains only to the cutoff date that will be stated in the notice form. Defendants' only argument against this specific form of relief is that it would "eliminate the presumption that opt-in plaintiffs have claims that are timely," and instead would "create the misimpression in an untold number of individuals that they may have timely claims, when in fact they do not." (ECF No. 94 at 10). Granted, some opt-in plaintiffs who respond to the notice might not remain in the case, depending on how the Court ultimately resolves the tolling issue. Another possibility, though, is that the Court will grant tolling on a group-wide basis due to its delayed resolution of the conditional certification and notice approval. Because many potential opt-in plaintiffs will have colorable claims for equitable tolling, it is appropriate for the notice form to state the earliest date at which equitable tolling would be considered. *Cf. Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1078 (S.D. Ohio 2016) ("Without suggesting the likelihood of success of any subsequent motions for equitable tolling, the Court feels that the most prudent approach is to afford notice to those potential plaintiffs.").

That earliest date, however, is not measured from January 15, 2021, as Plaintiffs propose in their Motion, because the Court's delay remained reasonable at that point. "What constitutes a 'reasonable' period of time to rule on a ripe motion for conditional certification" is context-specific; it "may vary from court to court or even from time to time within a single court." *Betts*, 351 F. Supp. 3d at 1077. In *Betts*, that period was six months from the date the motion became ripe. *Id*. Here, Plaintiffs argue that "given the Court's familiarity with the issues and the prior briefing," approximately two months from the filing date was "a period in which the motion could reasonably have been ruled upon." (ECF No. 92 at 2).[2] At the status conference, Plaintiffs changed

---

[2] Specifically, Plaintiffs reason that the Court had seen an earlier Motion for Conditional Certification (ECF No. 25), which was rendered moot by the Second Amended Complaint (ECF No. 44). However, the Court does not find that Plaintiffs should have expected an expedited ruling on the second Motion for Conditional Certification, since the Court never reached the merits of the first Motion. The Court's familiarity with the case did not give it a head start on

their benchmark to February 1, 2021, which is the date of the Court's first Order (later vacated) on conditional certification. The Court concurs, under this unique factual setup, that February 1, 2021, was the reasonable time by which to rule. In reaching this determination, the Court makes clear that it is motivated by highly unusual circumstances. A trifecta of disruptions has affected this case, including a reassignment between Judges, the need to vacate and reissue the Order on conditional certification, and the backlogs attributable to COVID-19 that have taken an indiscriminate toll on the nation's courts.

Had the Court's order of February 1, 2021, properly addressed Defendants' objections to conditional certification, then the cutoff date in the notice form would have been February 1, 2018. In this case, and under these specific facts, all delay in correcting that Order—and in resolving the instant tolling motion that Plaintiffs justifiably brought in response—was unreasonable and beyond the control of potential opt-in plaintiffs. The Court therefore will grant tolling for purposes of the notice forms for the period between February 1, 2021, and the close of the notice period. When the notice forms are distributed to potential opt-in plaintiffs, they shall state a cutoff date of **February 1, 2018**.

In so ruling, the Court is not deciding that all opt-in plaintiffs with otherwise time-barred claims will be permitted to remain in the collective action. The Court recognizes that the *Betts* line of cases, on which Plaintiffs rely, holds it is premature to grant group-wide tolling before potential plaintiffs have opted into the collective action. The Court therefore will reserve a final decision on group-wide tolling until all consent forms are received. At this juncture, the Court is deciding only that the notice form should neither preclude nor discourage any set of employees with potentially viable claims from appearing before the Court.

---

issues specific to certification (*e.g.*, commonality). Rather, Plaintiffs should have expected that the Court's first ruling on February 1, 2021, would be correct, and that there would be no need to vacate and reissue the Order.

Therefore, Plaintiffs' Motion to Toll (ECF No. 92) is **GRANTED IN PART**, insofar as the notice form shall state a cutoff date of **February 1, 2018**, and shall be distributed to all current and former employees since that date who otherwise meet the class definition.

### III. NOTICE PROPOSALS

The second subject of this Opinion is the pair of competing proposals for notifying potential opt-in plaintiffs (ECF Nos. 97, 98). The parties' proposals differ on the following issues:

1. Plaintiffs ask to include the case caption at the top of the notice form, which Defendants oppose. Plaintiffs contend that "[t]he Notice is a court document," and therefore, "a necessary requirement is that the case caption and court identification be part of the Notice." (ECF No. 98 at 2). Defendants cite decisions by other district courts in this Circuit, holding that a caption risks the appearance of judicial endorsement and thus should be avoided. (ECF No. 97 at 2).[3]

2. Plaintiffs propose a 60-day opt-in period, whereas Defendants propose 45 days. Plaintiffs aver that "60-days is reasonable" and will not delay the resolution of the case. (ECF No. 98 at 2). Defendants counter that 60 days is contrary to the "established practice" in this District, "which demonstrate[s] that a 45-day notice period is sufficient." (ECF No. 97 at 3).[4]

3. Plaintiffs propose to distribute their notice via text message, in addition to email and U.S. mail, but Defendants are not amenable to text-message notice. Plaintiffs contend that "[t]ext is increasingly the preferred method of communication of younger

---

[3] The cited cases are *Hardesty v. Litton's Mkt. & Rest., Inc.*, 2012 WL 6046743, at *2–3, *6 (E.D. Tenn. Sept. 28, 2012); and *Knispel v. Chrysler Grp. LLC*, 2012 WL 553722, at *7 (E.D. Mich. Feb. 21, 2012).

[4] Defendants cite the following cases as supporting a 45-day notice period: *Bradford v. Team Pizza, Inc.*, 2020 WL 3496150, at *7 (S.D. Ohio June 29, 2020); *Thomas v. Papa John's Int'l, Inc.*, 2019 WL 4743637, at *5 (S.D. Ohio Sept. 29, 2019); *Hall v. U.S. Cargo & Courier Servs., LLC*, 299 F. Supp. 3d 888, 900 (S.D. Ohio 2018); *Heaps v. Safelite Sols., LLC*, 2011 WL 1325207, at *9 (S.D. Ohio Apr. 5, 2011); and *Baden–Winterwood*, 2006 WL 2225825, at *3.

individuals," and they cite deposition transcripts where Defendants stated that they communicate with their employees regularly via two phone-based apps: Google Hangouts and Slack. (ECF No. 98 at 2–3). Defendants respond that text-message notice is contrary to language in this Court's conditional certification directing notice by mail and email. (ECF No. 97 at 3 n.1, citing ECF No. 96 at 11). They also identify a line of cases in this Circuit refusing to authorize text-message notice on grounds of privacy or redundancy. (ECF No. 99 at 2).[5]

4. Plaintiffs propose posted notices in Defendants' facility, which Defendants resist. Plaintiffs argue that "Defendants went to great lengths to convince the Court that it could not identify the putative class," meaning there is "a risk that the putative class list might not include all eligible potential opt-ins." (ECF No. 98 at 4). Defendants clarify that they "were initially concerned that identifying class members would be a complicated, lengthy and expensive project," but that they "subsequently ascertained that they are able to do so." (ECF No. 97 at 5). In a previous notice, which Defendants filed after reviewing information from ADP (a payroll services provider), Defendants submitted to the Court that they "can now identify members of Plaintiffs' proposed class without the need for the foregoing lengthy and burdensome process." (ECF No. 91). Defendants further argue that posted notice would be an overly broad measure, as it would reach many current employees who never worked in the relevant departments or under the challenged timekeeping policies. (ECF No. 97 at 6).

---

[5] The cited cases are *Kopp v. Precision Broadband Installations, Inc.*, 2021 WL 2688520, at *4 (N.D. Ohio June 30, 2021); *Green v. Verita Telecommc'ns Corp.*, 2021 WL 2227379, at *7 (N.D. Ohio June 2, 2021); *Foster v. Sitel Operating Corp.*, 2020 WL 3485576, at *6 (M.D. Tenn. May 22, 2020); *Hall*, 299 F. Supp. 3d at 899–900; and *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2017 WL 3500411, at *5 (S.D. Ohio Aug. 15, 2017).

5. Plaintiffs' proposed notice form contains other small differences in wording and formatting, as well as an expanded case description, which Defendants have not referenced in their briefing. These did not receive attention at the status conference, either. *See* ECF No. 98-3.

* * *

The Court, having reviewed these proposals and considered the parties' arguments at the status conference, resolves these differences as follows:

1. The notice form shall not include a case caption in the header. Plaintiffs have not countered the authority, cited by Defendants, that counsels against such a caption to avoid the appearance of judicial endorsement. Moreover, both notice proposals identify the case name in the first full paragraph of text, so no information will be omitted by excluding the case caption from the header of the notice form.

2. The notice form shall state an opt-in period of 60 days. This Court has granted substantially longer opt-in periods in other cases, *see, e.g.*, *Musarra v. Digital Dish, Inc.*, 2008 WL 818692, at *7 (S.D. Ohio Mar. 24, 2008) (Marbley, J.) (granting 90-day opt-in period); and it is not concerned that the additional 15 days as compared to Defendants' proposal will prolong this litigation in any significant way. Moreover, the widely reported processing delays at the United States Postal Service, which Plaintiffs raised at the status conference, cut in favor of a longer opt-in period here.

3. Notice shall be distributed via mail and email, but not text message. The Court's Order granting conditional certification anticipated this issue and noted that "[t]he trend in the Southern District of Ohio . . . 'is to allow notice by mail and email to ensure that putative class members receive notice of the pending action.'" (ECF No. 96 at 11,

quoting *Hall*, 299 F. Supp. 3d at 899–900). The Court stated that it "has followed this trend and will continue to allow both mail and email notice to the putative class members." (*Id.*, citing *Nazih v. Café Istanbul of Columbus, LLC*, 2018 WL 4334613 (S.D. Ohio Sept. 11, 2018)). Plaintiffs cite no cases to support text messaging as a third form of notice, and Defendants' cited authorities hold that text-message notice would be intrusive or redundant. Accordingly, the Court will adhere to its prior statement and will direct notice by mail and email.

4. Notice shall not be posted in Defendants' facility. Defendants represent that, despite their initial concerns about time and expense, they will be able to identify all putative class members from their payroll records. Absent other evidence that Defendants' reporting of putative class members would be incomplete, the Court finds that posted notice is unnecessary and overbroad.

5. Absent objection from Defendants, other differences in the notice form shall be resolved in favor of Plaintiffs' version—with one exception. Given the Court's decision on the tolling motion, certain opt-in plaintiffs will be joining the case subject to a later decision on equitable tolling. Therefore, it would be inaccurate to delete the word "may" on page 2 of the notice form, as Plaintiffs propose. *See* ECF No. 98-3 at 2 ("If you fit this definition, you ~~may~~ have the right to choose to become a plaintiff in this action."). Defendants' version, which preserves the word "may," correctly captures that the right of certain employees to become a plaintiff in this action is conditioned upon a later finding of equitable tolling.

\* \* \*

In summary, the Court **APPROVES** Plaintiffs' proposed notice form, except that the case caption shall be removed from the header of the document and the word "may" shall be retained on page 2. The Court **APPROVES** Defendants' proposed distribution plan of notice by email and U.S. mail, except that the opt-in period shall be 60 days rather than 45 days. Finally, the Court **APPROVES** the proposed consent form, on which the parties are in accord.

### IV.  CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Toll (ECF No. 92) is **GRANTED IN PART** insofar as the notice shall state a cutoff date of **February 1, 2018**. The notice forms and distribution plan are **APPROVED** consistent with the foregoing.

Defense counsel **SHALL**, within **fourteen days** of this Order, provide to Plaintiffs' counsel the names and last known postal and email addresses of all current and former employees that meet the definition of the conditionally certified class, *as though* it had been certified on February 1, 2021. Plaintiffs' counsel **SHALL**, within **seven days** of receiving the full contact information, commence sending notice to potential opt-in plaintiffs, consistent with the notice plan approved herein. The 60-day opt-in period shall run from the date on which the first notice letter or email is sent by Plaintiffs' counsel.

Finally, counsel for both parties **SHALL** meet and confer regarding a discovery plan and submit their proposal to the Court within **thirty days** of this Order.

**IT IS SO ORDERED.**

*/s/ Algenon L. Marbley*
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 16, 2022**